(93-CV-006741) Daniel MARKWEISE, Bonnie Markweise, individually and as Guardian for Steven Douglas Raymond Pallo and Wayne Murphy, Plaintiffs-Respondents,†

v.

PECK FOODS CORPORATION and Northbrook Property and Casualty Insurance, Defendants,

CITY OF MILWAUKEE and City of Milwaukee Department of Public Works, Defendants-Appellants.

(93-CV-012419) Darin GAINES, William Lorenzen, Elaine Forster, Herb Faude, Robert Zokan, Luann Emanuele, Carlo Emanuele, and for their minor child Joseph Emanuele, minor, Joseph Zaborski and all other persons similarly situated, Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE and Department of Public Works, Defendants-Appellants,

STATE of Wisconsin, Howard Avenue Water Purification Plant, Water Department and Common Council, Defendants.

†Petition to review denied.

(93-CV-013851) Julette M. MURPHY, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant.

(93-CV-013852) James J. RUDEK, as Special Administrator for The Estate of Sophia Rudek, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant.

(93-CV-015946) Earl L. DAVIS, Christella Evans, Rita Cumi Coulter and Latissha Coulter, Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, Defendant-Appellant.

(94-CV-000370) Connie MAHOS, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant.

(94-CV-004783) Gloria BOWIE, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant,

Donna SHALALA, Secretary of the Department of Health and Human Services, Defendant.

(94-CV-005844) Darlene QUANDT, Colleen Bornemann, individually and as Guardian of Bridget Bornemann, Corrine Dotz, Susan Galioto, Mavis Ornelas, James Marcou, Kathleen Mitby, Margaret Heddleson, Kenneth Scott, Shirley Terlizzi, Timothy Nelson, individually and as Guardian of Matthew Nelson, Kevin Corcoran, Robert Jaeger, Keith Kaufman, Beverly Swanson, Nancy Lepre, Trisha Urbanski, George Mlinar, Kim Kendziora, individually and as Guardian of Shawn Kendziora, Donald Gieryn, Rick Kroboth, James Sciano, Jon Stanczyk, Joseph Kehrer, Lisa Ranz, Sandra Kay, Mark Shepard, Thomas Mitchell, Georgia Mueller, Donna Kukla, Albert Fell, Jill Goodavish, Tracy Hunley, Linda Caraway, Erik Rentmeester, Alan Bertolas, Thomas Browne and Louise Noyes, Plaintiffs-Respondents,

v.

NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY, Peck Foods Corporation, City of Wauwatosa, a municipal corporation, City of West Allis, a municipal corporation, Village of Hales Corners, a municipal corporation, City of New Berlin, a municipal corporation, City of St. Francis, a municipal corporation, Village of Greendale, a municipal corporation, and The Grand Milwaukee Hotel, Defendants,

CITY OF MILWAUKEE, a municipal corporation,

GENERAL CHEMICAL CORPORATION, Defendant-Co-Appellant.

(94-CV-006765) Sandra STROHKIRCH and Dennis Strohkirch, her husband, Plaintiffs-Respondents,

210

PRIMECARE HEALTH PLAN, INC., a Wisconsin Health
Maintenance Organization, Involuntary Plaintiff,

v.

PECK FOODS CORPORATION and Northbrook Property
and Casualty Insurance Company, a foreign fire and
casualty company, Defendants,

CITY OF MILWAUKEE, a municipal corporation and City
of Milwaukee Department of Public Works,
Defendants-Appellants.

(94-CV-006767) James P. GREENWOOD, Plaintiff-
Respondent,

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, a
Wisconsin Blue Plan, Involuntary Plaintiff,

v.

PECK FOODS CORPORATION and Northbrook Property
and Casualty Insurance Company, a foreign fire and
casualty company, Estate of Julie A. Drews, by Janet
G. Drews and Janet G. Drews, mother of Julie A.
Drews, Plaintiffs-Respondents,

v.

A & H ADMINISTRATORS, Involuntary-Plaintiff,

v.

PECK FOODS CORPORATION and Northbrook Property
and Casualty Insurance Company, Defendants,

CITY OF MILWAUKEE, a municipal corporation and City
of Milwaukee Department of Public Works,
Defendants-Appellants.

Court of Appeals

211

*No. 94–2285. Oral argument May 22, 1996.—Decided July 23, 1996.*

(Also reported in 556 N.W.2d 326.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, of Milwaukee, and *Frank L. Steeves* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee. There was oral argument by *Frank L. Steeves*.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Frank J. Daily* and *Christopher H. Kallaher* of *Quarles & Brady*, of Milwaukee. There was oral argument by *Christopher H. Kallaher*.

On behalf of the defendant-respondent Northbrook Property and Casualty Insurance Company, the cause was submitted on the briefs of *Michael W. Morrison* of *Tressler, Soderstrom, Maloney & Priess*, of Chicago; and *Dennis L. Fisher* of *Meissner & Tierney, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Lawrence Walner, James B. Goldberg*, and *Kristi L. Browne* of *Lawrence Walner & Assoc., Ltd.*, of Chicago; *Richard J. Steinberg* of *Steinberg Law Offices*, of Brookfield; *Michael P. Cascino* and *Robert McCoy* of *Cascino Vaughan Law Offices*, of Chicago; and *Michael A. Pollack* of *Cascino Vaughan Law Offices*, of Milwaukee. There was oral argument by *Kristi L. Browne* and *Lawrence Walner*.

Amicus Curiae brief was filed by *Kent I. Carnell* and *James A. Olson* of *Lawton & Cates, S.C.*, of Madison, for the Wisconsin Academy of Trial Lawyers.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. This is an interlocutory appeal by the City of Milwaukee and General Chemical Corporation from an order entered by the trial court certifying as a class under RULE 803.08, STATS., all persons who claim or who may claim before these cases are concluded to have been injured by the cryptosporidium infestation of some of Milwaukee's drinking water in 1993.[1] The City argues that the certification order's inclusion of those claimants and potential claimants who have not complied with § 893.80, STATS., is improper. We agree. At oral argument, General Chemical contended that the certification threatened to deprive the defendants of their right to a jury trial guaranteed by Article I, § 5 of the Wisconsin Constitution. We remand to the trial court for further consideration of this issue.

1. *The City of Milwaukee.* Section 62.25(1), STATS., provides: "No action may be brought or maintained against a city upon a claim or cause of action unless the claimant complies with s. 893.80." As material here, § 893.80(1), STATS., provides:

---

[1] RULE 803.08, STATS., provides:

> **Class actions.** When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

Prior to the trial court's certification order, the actions were consolidated on the City's motion. *See* RULE 805.05, STATS.

Except as provided in subs. (1m) and (1p), no action may be brought or maintained against any [government entity] . . . unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the [government entity] . . . . Failure to give the requisite notice shall not bar action on the claim if the [government entity] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the [government entity]. [2]

---

[2] Section 893.80, STATS., provides in full:

**Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.**

**(1)** Except as provided in subs. (1m) and (1p), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe; and

The class-action procedure authorized by RULE 803.08, STATS., does not trump this notice requirement. *Carpenter v. Racine Comm'r of Pub. Works*, 115 Wis. 2d

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. No action on a claim against any defendant fire company, corporation, subdivision or agency nor against any defendant officer, official, agent or employe, may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect.

(1m) With regard to a claim to recover damages for medical malpractice, the time period under sub. (1) (a) shall be 180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered, rather than 120 days after the happening of the event giving rise to the claim.

(1p) No action may be brought or maintained with regard to a claim to recover damages against any political corporation, governmental subdivision or agency thereof for the negligent inspection of any property, premises, place of employment or construction site for the violation of any statute, rule, ordinance or health and safety code unless the alleged negligent act or omission occurred after November 30, 1976. In any such action, the time period under sub. (1) (a) shall be one year after discovery of the negligent act or omission or the date on which, in the exercise of reasonable diligence the negligent act or omission should have been discovered.

(1t) Only one action for property damage may be brought under sub. (1p) by 2 or more joint tenants of a single-family dwelling.

(2) The claimant may accept payment of a portion of the claim without waiving the right to recover the balance. No interest may be recovered on any portion of a claim after an order is drawn and made available to the claimant. If in an action the claimant

recovers a greater sum than was allowed, the claimant shall recover costs, otherwise the defendant shall recover costs.

(3) The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000, except that the amount recoverable shall not exceed $25,000 in any such action against a volunteer fire company organized under ch. 213 or its officers, officials, agents or employes. If the volunteer fire company is part of a combined fire department, the $25,000 limit still applies to actions against the volunteer fire company or its officers, officials, agents or employes. No punitive damages may be allowed or recoverable in any such action under this subsection.

(4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

(5) Except as provided in this subsection, the provisions and limitations of this section shall be exclusive and shall apply to all claims against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employe thereof for acts done in an official capacity or the course of his or her agency or employment. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable.

(6) A 1st class city, its officers, officials, agents or employes shall not be liable for any claim for damages to person or property arising out of any act or omission in providing or failing to provide police services upon the interstate freeway system or in or upon any grounds, building or other improvement owned by a county

218

Notices purporting to comply with § 893.80(1)(a), STATS., were filed by the class on behalf of named persons, who were alleged to have suffered damages as a result of the cryptosporidium infestation, and "other persons similarly situated." This reference to persons as of yet unidentified does not satisfy the "written notice of the circumstances of the claim" requirement of § 893.80(1)(a). *See Hicks v. Milwaukee County*, 71 Wis. 2d 401, 407, 238 N.W.2d 509, 513–514 (1976) (notice presenting "multiple claims" must "identify the claimants and show that the claims are being made by their authority"); *see also Carpenter*, 115 Wis. 2d at 216–217, 339 N.W.2d at 610.

The plaintiffs argue that even if the notices that were filed on behalf of the unknown members of the class did not satisfy § 893.80(1)(a), STATS., the City had "actual notice" within the meaning of § 893.80(1)(a)'s savings clause: "Failure to give the requisite notice shall not bar action on the claim if [the government entity] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the [government entity]." We disagree.

"Section 893.80(1)(a), STATS., is a notice of injury statute," designed to "allow governmental authorities to make a prompt investigation of the circumstances giving rise to a claim." *Elkhorn Area School Dist. v. East Troy Community School Dist.*, 110 Wis. 2d 1, 5,

and designated for stadium or airport purposes and appurtenant uses.

(7) No suit may be brought against any city, town or village or any governmental subdivision or agency thereof or against any officer, official, agent or employe of any of those entities who, in good faith, acts or fails to act to provide a notice to a property owner that a public nuisance under s. 823.113 (1) exists.

219

327 N.W.2d 206, 208 (Ct. App. 1982); *see also Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 593, 530 N.W.2d 16, 19 (Ct. App. 1995) (purpose of § 893.80(1)(a) is to enable entity to "investigate and evaluate" claim). Thus, it permits claims to proceed against the designated government entities even though a claimant has not filed a notice in proper form if the government entity "had actual notice *of the claim* and *the claimant* shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial" to the entity. Section 893.80(1)(a) (emphasis added).

The term "actual notice" in § 893.80(1)(a), STATS., "is the equivalent of actual knowledge." *Elkhorn Area School Dist.*, 110 Wis. 2d at 5, 327 N.W.2d at 209. Thus, the provision requires that the government entity not only have knowledge about events for which it may be liable, but also the identity and type of damage alleged to have been suffered by a potential claimant. *Id.*, 110 Wis. 2d at 5–6, 327 N.W.2d at 209.[3] Nor could the rule

---

[3] In *Elkhorn Area School Dist.*, notice by the East Troy School District that property for which it received tax revenues was no longer within its taxing jurisdiction but had been transferred to the Elkhorn Area School District, and that subsequent to the property's transfer the East Troy Community School District "unwittingly accepted property tax revenues" to which it was not entitled, did not give the East Troy Community School District "actual knowledge" of the Elkhorn Area School District's claim to the diverted tax revenues. *Elkhorn Area School Dist. v. East Troy Community School Dist.*, 110 Wis. 2d 1, 5–6, 327 N.W.2d 206, 209 (Ct. App. 1982). *Cf. Medley v. City of Milwaukee*, 969 F.2d 312, 320 (7th Cir. 1992) ("actual notice" requirement of § 893.80(1)(a), STATS., requires that the government entity not only know that a potential claimant might be aggrieved but also the claim for relief); *Orthmann v.*

be otherwise, given the statute's purpose: unless the government entity has "actual knowledge" of both the claimant and his or her claim, the investigation and evaluation envisioned by the statute is impossible. Significantly, in both *Hicks* and *Carpenter* the government entities knew about the circumstances that were alleged to have caused the harm for which the plaintiffs sought class-action relief. *See Hicks*, 71 Wis. 2d at 403, 238 N.W.2d at 511–512 (alleged overcharging of Huber-law inmates); *Carpenter*, 115 Wis. 2d at 214, 339 N.W.2d at 609 (decision by municipality to not make solid-waste pickups from residential buildings with five or more dwelling units). Here, although the record indicates that the City knows about and has investigated the 1993 cryptosporidium infestation, and that it also knows the identity of some persons who claim injuries as a result of that infestation even though those persons may not have filed notices under § 893.80(1)(a), there is nothing in the record indicating that the City is aware of all those who have been swept into the RULE 803.08, STATS., class.[4] The City cannot investigate and evaluate the claims of those yet unknown. Moreover, there is nothing in this record to support a determination that those prosecuting the class action have shown that the "failure to give the requisite notice has not been prejudicial" to the City. *See* § 893.80(1)(a).

---

*Apple River Campground, Inc.*, 757 F.2d 909, 911 (7th Cir. 1985) (filing of lawsuit against village by claimant gave village "actual notice" of claim).

[4] The plaintiffs' brief asserts that the City knows: (1) that "[a] definable percentage of the population had been exposed to cryptosporidium," and (2) that "[a]pproximately 400,000 people, perhaps more, became ill as a result of exposure to cryptosporidium in the water supply."

Indeed, there can be no assessment of "prejudice" until the identity of *each* claimant is known and the circumstances of his or her claim are explored.

The plaintiffs argue that even if there has been no compliance with § 893.80(1)(a), STATS., with respect to those members of the class who are as of yet unknown, compliance with § 893.80(1)(a) was not required because their action is based, in part at least, on the City's alleged failure to inspect a drainage connection pipe at an alleged source of the contamination. This, they contend, puts them within § 893.80(1p), STATS., which, they claim, exempts them from the notice requirement of § 893.80(1)(a). We disagree.

As we have seen, § 893.80(1)(a), STATS., provides, as material here: "Except as provided in subs. (1m) and (1p), no action may be brought or maintained against any [government entity] unless:" there is compliance with § 893.80(1)(a) & (b). Section 893.80(1p), STATS., provides:

> **(1p)** No action may be brought or maintained with regard to a claim to recover damages against any political corporation, governmental subdivision or agency thereof for the negligent inspection of any property, premises, place of employment or construction site for the violation of any statute, rule, ordinance or health and safety code unless the alleged negligent act or omission occurred after November 30, 1976. In any such action, the time period under sub. (1) (a) shall be one year after discovery of the negligent act or omission or the date on which, in the exercise of reasonable diligence the negligent act or omission should have been discovered.

222

As with the analysis of any statute, we must give to § 893.80, STATS., the meaning encompassed by its words, *see DNR v. Wisconsin Power & Light Co.,* 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982), because those words express its purpose, *see 62 Cases of Jam v. United States,* 340 U.S. 593, 596 (1951).

■

Section 893.80(1p), STATS., does two things. First, it precludes actions based on "the negligent inspection of any property, premises, place of employment or construction site for the violation of any statute, rule, ordinance or health and safety code unless the alleged negligent act or omission occurred after November 30, 1976." Second, it sets a time limit within which to bring such an action. There is nothing in either § 893.80(1) or § 893.80(1p) that even hints that the notice provisions of § 893.80(1)(a) & (b), STATS., are inapplicable to actions founded on alleged negligent inspection, just as there is nothing in either § 893.80(1) or § 893.80(1m) that suggests that the notice provisions of § 893.80(1)(a) & (b) are inapplicable to medical-malpractice actions.[5] Indeed, the words "[e]xcept as provided in subs. (1m) and (1p)" indicate that § 893.80(1)(a) & (b) are modified by § 893.80(1m) & (1p) only insofar as the terms of § 893.80(1m) & (1p) conflict with those in § 893.80(1)(a) & (b). Significantly, the legislative history of § 893.80(1p) reveals that the legislature intended only to ensure a November 30,

---

[5] Section 893.80(1m), STATS., provides:

**(1m)** With regard to a claim to recover damages for medical malpractice, the time period under sub. (1) (a) shall be 180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered, rather than 120 days after the happening of the event giving rise to the claim.

1976, start date for actions based on alleged negligent inspection and to establish a one-year statute of limitations.[6]

That portion of the trial court's certification order against the City that includes within the class those claimants and potential claimants who have not complied with § 893.80(1), STATS., is reversed.

■

2. *Jury-trial right.* Article I, § 5 of the Wisconsin Constitution provides that "[T]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." At oral argument, counsel for General Chemical argued that the class action procedure, as envisioned by the plaintiffs, and, apparently, by the trial court, would deprive the defendants of their right to have their liability to each member of the class decided by a jury.

---

[6] The legislature's Prefatory Note to the legislation that created § 893.80(1p), STATS., explained the intent of the legislation:

In *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 247 N.W.2d 132 (1976), the Wisconsin supreme court first indicated that a municipality could be held liable to injured parties for negligent inspections conducted by municipal employes.

This bill establishes a statute of limitations for tort actions against certain governmental bodies for negligent inspections by providing that such actions must be commenced within one year after the date the negligence was discovered or, in the exercise of reasonable diligence, should have been discovered.

The supreme court, in *Coffey*, did not specifically rule that potential municipal liability resulting from negligent inspections would apply only to inspections undertaken after the date of the *Coffey* decision. Therefore, the bill also provides that governmental bodies will not be liable for damages if the negligent inspection occurred on or before November 30, 1976 (the date of the *Coffey* decision).

PREFATORY NOTE, 1987 Wis. Act 377, 2 Wisconsin Session Laws at 1347 (1988).

In rejoinder, plaintiffs' counsel indicated that she foresaw that any money awarded to the class would be apportioned to the various claimants by a tribunal constituted for that purpose by the trial court. Under that circumstance, of course, the tribunal would have to determine such issues as causation (did the claimant suffer injury, and, if so, was it caused by the cryptosporidium infestation) and contributory negligence with respect to each claimant lining up for his or her share of the money. Although the right-to-jury-trial issue was not argued in the briefs, and would thus in the usual case be deemed waived, *see In re Estate of Balkus*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985), the deprivation of the constitutional right to a jury resulting from the trial court's certification of the class, if in fact there were such a deprivation, is significant enough for us to consider nevertheless, *see Weichers v. Weichers,* 197 Wis. 159, 162, 221 N.W. 733, 734 (1928) (public interest in legal issue may justify appellate review of matter that might otherwise be deemed waived).

The right to a jury trial in civil cases that is guaranteed by Article I, § 5 of the Wisconsin Constitution is substantially similar to that right guaranteed by the Seventh Amendment to the United States Constitution ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."). The Seventh Amendment jury-trial right does not apply to the states. *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916). Nevertheless, we may be guided by the federal cases interpreting that provision. *See State v. Miller*,

202 Wis. 2d 56, 68-69, 549 N.W.2d 235, 241 (1996) (appropriate to use "principles and analytical framework developed by the United States Supreme Court" in cases involving a provision of the United States Constitution that is similar to the provision of the Wisconsin Constitution under consideration, unless the Wisconsin Constitution affords greater protections) (First Amendment); *State v. Tompkins*, 144 Wis. 2d 116, 135, 423 N.W.2d 823, 831 (1988) (Fourth Amendment); *cf. Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 190 Wis. 2d 650, 665, 529 N.W.2d 905, 910–911 (1995) (antitrust law).

The federal jury-trial right applies to class actions. *Ross v. Bernhard*, 396 U.S. 531, 541 (1970) (*dictum*). This means that the parties to a class-action lawsuit have the right to have all "juriable issues" decided by the same jury. *Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995); *see also In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (questioning, but not deciding, whether defendants in an asbestos class-action case were being deprived of their right to a jury trial in light of the many disparate issues of causation and damage).[7] There is no authority that we know that would permit a different result under the Wisconsin Constitution. *Cf. Leverence*

---

[7] *But see contra* 7B CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1801 at 461 (2d ed. 1994) (citing no authority); *Rodriguez v. Banco Central*, 790 F.2d 172, 180 (1st Cir. 1986) (adopting in *dictum* position of Wright, Miller, Marcus treatise); *cf. Union Carbide and Carbon Corp. v. Nisley*, 300 F.2d 561, 589 (10th Cir. 1961) (permitting special master to determine damages for individual members of class does not violate Seventh Amendment when jury determined liability and liability formulae).

*v. PFS Corp.*, 193 Wis. 2d 317, 328-330, 532 N.W.2d 735, 739-740 (1995) (in multiple-party lawsuit that is not brought as a class action, all parties have right to jury trial under Article I, § 5 of Wisconsin Constitution). Clearly, it would be nigh impossible to have one jury decide all issues for *each* member of the class—such a trial could take years, far beyond the constitution of the most stalwart of our citizens. This may be the reason why the Advisory Committee's note to the 1966 amendment to RULE 23(b)(3) of the Federal Rules of Civil Procedure, which requires a commonality of issues—as does RULE 803.08, STATS.—recognizes that "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways."

This appeal presents substantial issues involving the defendants' right to a jury trial under the Wisconsin Constitution that have not been briefed or, apparently, considered by the trial court. Accordingly, we remand to the trial court for an evaluation of if and how the jury-trial right found in Article I, § 5 of the Wisconsin Constitution affects certification under RULE 803.08, STATS. The trial court is also to evaluate how our decision that the class may not include those persons who have not complied with § 893.80, STATS., affects whether the class-action procedure remains viable. Until these matters are determined, consideration of the other issues raised by the City and by General Chemical as to whether the criteria for certification have been met is premature.

*By the Court.*—Order reversed in part, and cause remanded.

SCHUDSON, J. (*concurring*). In light of the confusion that could result from the dissenting opinion, I write separately to offer what I hope will be some helpful clarification.

No authority supports the Dissent's extraordinary assertion that exposure of "a definable percentage of the population . . . to the contaminated water," resulting in illness of "approximately 400,000 persons" establishes "actual notice," Dissent at 229-30. The "definable percentage" is dubious and, most certainly, the addition of approximately 398,500 unknown persons as *actual-notice* claimants is utterly astounding given that only about 1,500 *actual* claimants have been named.

Moreover, the City's brief and oral argument absolutely refute the Dissent's inexplicable statement that "[t]he City does not dispute that it had actual notice or that it was not prejudiced." Dissent at 230. Of course it does; otherwise these issues would not be here on appeal. The City, clearly and logically, has explained that it can not assess its liability or attempt to resolve the potential claims of approximately 398,500 people, each of whom may have been damaged differently, when it does not know who they are or what they say they suffered. Section 893.80, STATS., protects the City from doing so.

Quoting the trial court decision at length, the Dissent implies that we have rejected the trial court's discretionary determination of the class action criteria. We have not. Subject to the trial court's further evaluation of the issues involving the defendants' right

to a jury trial, our decision renders: (1) consolidated actions by about 1,500 persons against the defendants; and (2) a potential class action on behalf of about 400,000 persons against the non-City defendants. Our decision requires the trial court to continue its good efforts to analyze challenging issues and determine whether and how this complex litigation may be pursued through class action.

I am authorized to state that Judge Ralph Adam Fine joins in this concurring opinion.

WEDEMEYER, P.J. (*dissenting*). I write separately because I respectfully disagree with the majority's conclusions. I would affirm both the trial court's decision that the notice of claim statute, § 893.80, STATS., was satisfied, as well as the trial court's discretionary decision to conditionally certify the class.

A. *Section 893.80,* STATS.

I agree that under *Hicks* and *Carpenter*, the class cannot demonstrate that it satisfied the express notice provisions of the class action statute.[1] However, neither *Hicks* nor *Carpenter* addressed the actual

---

[1] Both cases involved an individual who filed a notice of claim on his behalf and on behalf of all members of the class. *Hicks v. Milwaukee County*, 71 Wis. 2d 401, 407, 238 N.W.2d 509, 513 (1976); *Carpenter v. Racine Comm'n of Public Works*, 115 Wis. 2d 211, 214, 339 N.W.2d 608, 609 (Ct. App. 1983), *cert. denied*, 466 U.S. 904 (1984). Both cases concluded that the class could not be maintained because the notices of claim, purportedly filed on behalf of the entire class failed to meet the minimum requirements: (1) identify the claimants; and (2) show that the named individual is authorized to act on behalf of all

notice provision of § 893.80, STATS., and the relationship to class action suits. I conclude, therefore, that neither case precludes such consideration.

As indicated in § 893.80, STATS., failure to comply with the express notice provisions of the statute will not bar the claim against the City if the City had actual notice of the claims and was not prejudiced by the claimants' failure to comply with the express notice provisions of the statute.

Based on a review of the record, I conclude that the City did have actual notice of the claims and was not prejudiced by the failure of the unnamed class members to file individual notices. The record establishes the following facts. As reported cases of illness spread throughout the metropolitan area, the City began to investigate the causes of the outbreak. In early April, after tests on several individuals struck with the digestive illness confirmed the presence of cryptosporidium, City of Milwaukee Mayor John O. Norquist issued a boil advisory for any Milwaukee residents drinking or using Milwaukee municipal water in food preparation.

The investigation conducted by the City involved employees and agents of the City. The investigation revealed that there were increases in the turbidity of treated water at the City's southern water treatment plant from March 23, 1993, through April 9, 1993. Laboratory tests confirmed the presence of cryptosporidium occysts in stool samples from several Milwaukee area residents. Findings pointed to the water supply as the likely source of the illnesses. The southern water treatment plant was temporarily closed. An article published in the NEW ENGLAND

the claimants. *Hicks*, 71 Wis. 2d at 407, 238 N.W.2d at 514; *Carpenter*, 115 Wis. 2d at 216-17, 339 N.W.2d at 610.

JOURNAL OF MEDICINE indicated that the contaminated water affected approximately 400,000 persons.

Based on the foregoing, I conclude that the City had actual notice that: cryptosporidium had entered the water supply at the southern filtration plant; a definable percentage of the population had been exposed to the contaminated water; and approximately 400,000 persons became ill because of the contaminated water. This knowledge is reasonably sufficient to satisfy the dictates of the actual notice provision of § 893.80, STATS. I further conclude that the City was not prejudiced by the absence of individual notices of claims from each member of the class. The City does not dispute that it had actual notice or that it was not prejudiced. Instead, it argues that any information it obtained from conducting its own investigation does not operate to satisfy the notice requirements of the statute. The City cites *Felder v. Casey*, 139 Wis. 2d 614, 408 N.W.2d 19 (1987), *cert. granted*, 484 U.S. 942 (1987), *reversed* 487 U.S. 131 (1988), in support of this proposition. I am not persuaded. In *Felder*, our supreme court determined that the facts presented by *Felder* did not support a finding of actual notice. *Id.* at 630, 408 N.W.2d at 26. I do not interpret *Felder* to be a blanket holding that whenever the City conducts its own investigation into an incident that the information it gleans from the investigation can never satisfy the actual notice provision of § 893.80. The facts presented in the instant case are very different from those presented in *Felder*. Felder never filed any notice of claim to put the City on notice that he intended to hold the City responsible for his injuries. *Id.* The class in the instant case did file notices with the City showing its intent to hold the City responsible. In addition, the facts in this case are

231

unique: as a result of contaminated water supplied by the City, the Milwaukee area experienced a public health crisis. Based on these factors, I would reject the City's contention that any information it learned on its own cannot be used to show that it had actual notice.

The purpose of the notice requirement of § 893.80, STATS., to provide the City with an opportunity to properly investigate claims and budget accordingly for settlement or litigation, was satisfied. *See State Dep't of Natural Resources v. City of Waukesha,* 184 Wis. 2d 178, 195, 515 N.W.2d 888, 894-95 (1994). The City not only received notice of claims from thousands of individually named class members, which indicated the class's intent to include all persons affected, but it also conducted its own investigation, and determined the specific identity of affected persons. Therefore, the purpose of the notice provisions was fulfilled in this case. The City received notice of the size of the potential class as well as the substantive claims that the class may raise. Under the facts and circumstances of this case, the actual notice provision of the statute was satisfied.

## B. *Certification Criteria.*

The second issue in this appeal is whether the trial court erroneously exercised its discretion in certifying the consolidated cases as a class. The City and General Chemical argue that the certification criteria were not satisfied and, therefore, the trial court erred in its decision. The class argues that certification was appropriate under the § 803.08, Stats., and class certification criteria.[2] The trial court ruled:

-----

[2] Wisconsin's class action statute, § 803.08, STATS., provides:

Whether or not certification shall be granted rests in the sound discretion of the Court relying on <u>Nolte</u> and <u>Schlosser</u>. I have not put in the citations of the cases. We are all familiar with them.

This Court today, after rigorous analysis, decides that this unique lawsuit fits the concept and intent embodied in Section 803.08 of the Wisconsin Statutes though some tailoring is probable as the case progresses.

Having reviewed the briefs so competently provided, the arguments made and the pleadings on file, and acknowledging the appropriate concerns ably presented by the City defendants, this Court conditionally certifies as a class action against the City defendants the cases of Markweise and Gaines, in each of their substantive complaints, defining the class as all persons who suffered injury as a result of the contamination with cryptosporidium of the water publicly supplied by the City of Milwaukee which contamination occurred in March and April of 1993.

The Court appoints as class representatives the named plaintiffs in Markweise and Gaines and further appoints Lawrence Walner and Associates, Limited and Cascino Vaughn Law Offices, Limited to represent the class defined above naming Lawrence Walner as lead counsel for the class.

This Court is satisfied that the record before it is legally sufficient and more than adequate upon which to base today's decision.

In March and April of 1993, there was an outbreak of illness among the residents of the City of Milwaukee, often characterized by a watery

When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

diarrhea. Other physical complications occurred ranging from distress to death.

Some of the City's water supply is received through a water intake sited in Lake Michigan east of the pumping station at the east end of Texas Avenue in the Bay View section of Milwaukee's southside—And Bay View is part of Milwaukee and not a suburb, for counsel's consideration. The water is pumped by the Texas pumping station to the Howard Avenue purification plant. There the water is purified and distributed to consumers for consumption and other uses. The intake, pumping station, purification plant and the network of channeling and distribution pipes are owned, operated, and maintained by the City of Milwaukee. The City of Milwaukee charged its customers a fee for the water so provided.

Increased turbidity of the water processed at the Howard Avenue plant was noted toward the end of March of 1993, and particularly from March 23rd through April 5th of 1993.

The outbreak of illness within that same time frame led to a belief that the water supply may have been the source of infection, a boil advisory was issued on April 7th by the City, and the Howard Avenue plant temporarily closed on April 9th of 1993.

Cryptosporidium, a water-borne parasite, was identified in the stool samples of some of the persons who became ill. A study reported in the New England Journal of Medicine concluded that the massive outbreak of watery diarrhea was caused by cryptosporidium occysts which apparently passed through the filtration system of the Howard Avenue plant. That study estimated that more than 400,000 people were affected during the outbreak but by limiting the study's definition

234

to watery diarrhea, the size of the affected population may be underestimated.

The City acknowledges that over 1500 persons have given notice of claim for damages attributed to the cryptosporidium-tainted water, and counsel for the plaintiffs in the cryptosporidium-related cases consolidated in this Court assert representation of over 1400 persons.

The complaints in the class action claim the injuries incurred by the representative plaintiffs and the members of the class were incurred as a result of the City's negligence, that the City failed to notify the plaintiffs and members of the class that the water was, or was likely to become, contaminated with cryptosporidium resulting in injury, that the City is liable under the doctrine of strict liability, and that the City was liable to them for breach of contract and breach of implied warranty.

Section 803.08 of the Wisconsin Statutes provides: "When the question before the Court is one of a common or general interest of many persons, or when the parties are very numerous and it may be impractical to bring them all before the Court, one or more may sue or defend for the benefit of the whole." That concept being denoted a class action.

Although the reported Wisconsin cases do not factually approach the circumstances presented in the present lawsuit, much guidance is provided. The prerequisites for class action [are] commonality, representation, and impracticability.

Commonality is tested by determining whether all members of the class desire the same outcome of the suit that the alleged representatives of the class desire. Mercury Records. All interests need not be shared but, rather, a common interest must exist. Both Harris and Jones discuss that. Cases decided

235

understanding the Federal Rule which is not controlling, but instructive, discuss the concepts of predominance and superiority.

In the instant case, the claims of the representative plaintiffs and unnamed members of the class rests upon the same theories of law and the same set of facts as respects liability — was the City negligent in testing or treating the water, in failing to warn the possible contamination or in failing to inspect a drainage connection pipe at a certain facility? Did the City break its contractual obligations to consumers?

An affirmative response is the clear and only goal of the plaintiffs and the class. No animosity or cross purpose exists between or among them.

There are obstacles. Causation, individual damages, subrogation, possible contributory negligence are advanced by the City as mitigating against commonality, and these are not ignored by the Court. However, in my judgment, the alleged contamination of the water supply provided by the City is a predominant issue that supersedes any individual variance as to causality or damages.

The concept of de minimis is wrongfully argued by the City since one value to be accomplished by class certification is to provide access to the courts for those due to the size of their claim are unable practically or financially to advance their cause in any other manner. Pre-existing conditions do not intervene to prevent recovery since by definition they pre-exist the alleged wrong. They would be viable in damage determinations.

Looking at the case before us, it is clear that the liability issue predominates and that the class approved provides a superior method of resolution.

Consider, for example, the expense to litigants, the expenditure of court time, and the delay forced upon other litigants if 1500 cases at a minimum and

236

an indefinable at present but potentially large number of others were to be tried separately.

The retrial over and over of the same factual issues, the repeated testimony of expert witnesses, and the possibility of inconsistent verdicts make individual resolution of claims an administrative and judicial logjam with delay and uncertainty overwhelming the process.

As to representation, two considerations are paramount—whether the representative plaintiffs clearly share a consistent and non-antagonistic interest with the unnamed class members, and whether counsel for the representative plaintiffs and class are competent and will fairly represent the interest of all plaintiffs.

A reading of the complaints demonstrates unequivocally that the representative plaintiffs seek to hold the City liable for the damages each sustained by use or consumption of the crypto-bearing water, exactly the interest of the unnamed class members.

There is and can be no animosity between or among those representative plaintiffs and the class.

. . . .

[T]he choice of counsel by a host of claimants convinces me of the ability of selected counsel to fairly and competently represent the claim as well as the representative — as the claim — of the class as well as the representative plaintiffs.

. . . .

Impracticability is essentially an issue of numerosity. Suffice it to say whether we consider 1500, 15,000 or 150,000, the number of claimants clearly exceeds any number ever found by any Court to be insufficient for class action.

Class certification is not a panacea operating to necessarily resolve all issues for all time in a single proceeding. It is, however, highly praised by some

as said by the respected Professor Arthur Miller of Harvard back in 1987.

"Class actions have proven to be the most effective legal technique for avoiding piecemeal litigation and preserving legal resources."

. . . .

It is understood that there will be manageability problems with a case of this magnitude proceeding in the class mode, but the alternative would be particularly oppressive and destructive of the goals of our system of justice.

In addition to being a more inexpensive, efficient, and inclusive method of claims adjudication, there is the additional benefit to defendant that a finality of litigation will be accomplished, even perhaps through exoneration allowing that though opt outs would be separately resolved, they would be known.

The class certification also lends itself as a tool toward settlement, a valid and desirable result in all litigation. . . .

. . . .

It must be remembered that the Court retains the authority through the length of this litigation to amend the parties, to redefine the class, to establish subclasses, to join or bifurcate issues or causes, and to ultimately control disposition.

Innovative and imaginative techniques for resolution will not be avoided by this court simply because they are innovative or imaginative. This Court will throughout this matter maintain a focus on due process and fairness to all.

. . . .

It is the Court's decision, for all the reasons set forth, that certification of the class defined above be granted . . . .

This court's review of a trial court's decision that a class action is appropriate is limited to determining whether the trial court erroneously exercised its discretion. *See Mercury Records Productions, Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 491, 283 N.W.2d 613, 618 (Ct. App. 1979). The trial court did not erroneously exercise its discretion if it addressed the pertinent facts, applied the proper law, and reached a rational conclusion, *see Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981), even if this court might reach a different conclusion. I emphasize that this standard restricts this court's review to determining only whether the trial court erroneously exercised its discretion, and this court cannot decide the substantive merits of the trial court's decision.

In order to maintain a class action, three criteria must be satisfied. *Nolte v. Michels Pipeline Constr. Inc.*, 83 Wis. 2d 171, 176, 265 N.W.2d 482, 485 (1978). The criteria are: (1) the named parties must have a common interest with the persons represented; (2) the named parties must be able to fairly represent the common interest so that the issue may be fairly and honestly tried; and (3) it is impracticable to bring all the interested persons before the court. *Id.* If these three criteria are met, the trial court must also balance the benefits to be gained by class certification against the burdens inherent in a class action. *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 233-34, 271 N.W.2d 879, 883 (1978).

As is evident by the excerpt quoted above from the trial court's decision, the trial court addressed each of these factors at length, and employed a balancing of benefits versus burdens. The trial court found that all of the members of the proposed class satisfied the common interest criteria because each desired the

same outcome—that the defendants be found liable for the damages caused by the contamination of the water supply. Finding that the common interest factor was satisfied did not constitute an erroneous exercise of discretion.

"The test for common interest is whether all members of the purported class desire the same outcome of the suit that the alleged representatives of the class desire." *Mercury Records*, 91 Wis. 2d at 490, 283 N.W.2d at 617. The trial court's finding satisfied this test. I am not persuaded by the defendants' arguments that the differences in causality and damage issues preclude a finding of commonality. Although the variances of cause and damage issues in this case may eventually pose some difficulties in its ultimate resolution, these issues do not alter the finding of the common interest criteria. The trial court indicated a willingness to employ innovative and imaginative techniques to address potential hurdles and I would not prematurely usurp the trial court's attempt to do so. The fact that such hurdles may occur somewhere during the litigation does not make the trial court's finding that all purported class members share a common interest erroneous. Further, the trial court determined that the issue of common interest was predominant over the other concerns.

The trial court also addressed the second criteria—whether the named class members fairly and adequately represent the interest of the unnamed class members. In addressing this factor, the trial court again found that this criteria was satisfied because the named members and the unnamed members are aligned in interest and no animosity exists between the two groups. The trial court also found the attorneys representing the class to be competent and capable of

providing proper representation. This is a proper analysis. *See Goldwater v. Alston & Bird*, 116 F.R.D. 342, 353 (S.D. Ill. 1987) (adequate representation factor is satisfied if the named plaintiffs' interests are not antagonistic to the class). There is sufficient evidence in the record to uphold the trial court's determination and the defendants have failed to present this court with any evidence to show that the named members cannot adequately represent the unnamed members. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.) (it is the defendant's burden to establish that representation is inadequate), *cert. denied*, 459 U.S. 880 (1982). Further, the trial court *conditionally* certified this class, acknowledged that potential problems may arise during the course of the litigation, and recognized its authority to take any action necessary to address and resolve problems that arise.

The record also demonstrates that the trial court aptly addressed the third criteria—impracticability. The trial court addressed the significant burdens and problems that would occur if the thousands of cases at issue were allowed to proceed independently. Specifically, the trial court ruled: "Suffice it to say whether we consider 1500, 15,000 or 150,000, the number of claimants clearly exceeds any number ever found by any Court to be insufficient for class action." After addressing these considerations, the trial court determined that the class action would be the most effective legal technique for the cryptosporidium claims. The defendants' concerns regarding this factor again focus on the potential problems regarding the variances among causality and damages. My response here is the same as indicated above: I would not prematurely usurp from the trial court the chance to successfully resolve these issues within the context of

the class action and, therefore, these potential problems do not lead me to conclude that the trial court's determination of this factor was erroneous.

Finally, the trial court engaged in a balancing of the benefits versus the burdens. It noted that there may be some manageability problems, but reasoned that these problems may be resolved utilizing imaginative and innovative techniques and that the alternative "would be particularly oppressive and destructive of the goals of our justice system." I agree.

In reviewing the trial court's discretionary determination to conditionally certify the class, I cannot conclude at this point that the trial court's discretionary determination was erroneous. The trial court's certification was *conditional*, and it committed itself to attempting to make the class action work. Although it is conceivable that the trial court may not be able to fashion a workable method to address the issues raised by the defendants, that potential hurdle should not prevent the trial court from making an effort to do so. Moreover, the trial court's commitment to make such an attempt furthers the purposes of a class action to simplify the lawsuit, avoid multiplicity of litigation, provide access to efficient justice to class members with nominal claims, and to avoid unnecessary prophylactic filing. General Chemical's concerns about its right to a jury trial can be addressed by the trial court's due diligence as the case proceeds to resolution. By allowing the trial court to exercise its powers of discretion as delineated in its motion decision, Wisconsin's rich tradition of allowing its citizens reasonable access to judicial process would neither be jeopardized nor abused. Thus, it is not necessary to reverse the trial court's certification decision on that basis.

I would affirm the trial court's order and, therefore, respectfully dissent.