In re Wal-Mart Employee Litigation:

Kathleen Hermanson, Ardyce Weichbrod and
George Otradovec, Plaintiffs-Appellants,†

v.

Wal-Mart Stores, Inc., a Delaware corporation,
Defendant-Respondent.

Court of Appeals

*No. 2004AP2926. Submitted on briefs January 31, 2006.
—Decided February 21, 2006.*

2006 WI App 36

(Also reported in 711 N.W.2d 694.)

† Petition to review denied 7-25-06.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert F. Johnson* of *Cook & Franke, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bernard J. Bobber* of *Foley & Lardner, LLP*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J.   Kathleen Hermanson, Ardyce Weichbrod, and George Otradovec appeal, pursuant to our leave, a non-final order denying class certification under Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 803.08. *See* Wɪs. Sᴛᴀᴛ. § 808.03(2) (interlocutory appeals). We affirm.

¶ 2.   The operative pleading in connection with this appeal is the plaintiffs' "second amended consolidated complaint." (Uppercasing omitted.) As material, it alleges that the named plaintiffs and other hourly Wisconsin employees of Wal-Mart Stores, Inc., were not paid what Wal-Mart should have paid them when they "worked through all or a portion of their meal and rest breaks." The complaint asserts that the proposed class is made up of "tens of thousands of presently and formerly employed hourly paid Wal-Mart employees" in Wisconsin, and that the alleged short-fall in proper compensation can be proved by Wal-Mart's "computer generated" payroll records. The trial court determined that the proposed class should not be certified under Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 803.08 because, among other reasons, the proposed class would be "unmanageable," recognizing that much of the pertinent Wal-Mart payroll records were generated in the first instance by members of the

proposed class (that is, by the hourly employees of Wisconsin Wal-Mart and Sam's Club stores) and that, therefore, "Wal-Mart has a right to examine each individual claimant regarding the circumstances of his or her employment, and each instance of missed break time or off-the-clock work."[1] We agree and, accordingly, do not discuss the other reasons Wal-Mart contends support the order denying class certification. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

¶ 3.   WISCONSIN STAT. RULE 803.08 provides:

When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

There are four prerequisites to class certification under this rule:

- "there must be a common or general interest shared by all members of the class";

- "the named parties must fairly represent the interest involved";

- "it must be impracticable to bring all interested parties before the court"; and

---

[1] The Honorable Lee E. Wells denied an initial motion to certify this case as a class action, but permitted those seeking class-action status to re-plead, which they did. Following Judge Wells's retirement, the Honorable Jeffrey A. Kremers entered the order from which this appeal is taken, and relied, in large measure, on Judge Wells's written decision.

- the proposed class must be manageable.

*Cruz v. All Saints Healthcare Sys., Inc.*, 2001 WI App 67, ¶ 12, 242 Wis. 2d 432, 442–443, 625 N.W.2d 344, 349–350; *see also Schlosser v. Allis-Chalmers Corp.*, 65 Wis. 2d 153, 172, 222 N.W.2d 156, 166 (1974) (" '(T)he court must determine whether the advantages of disposing of the entire controversy in one proceeding are outweighed by the difficulties of combining divergent issues and persons.' ") (quoted source omitted; parenthetical by *Schlosser*). A trial court's decision whether to certify a class under RULE 803.08 is vested in its reasoned discretion. *Cruz*, 2001 WI App 67, ¶ 11, 242 Wis. 2d at 442, 625 N.W.2d at 349. "We will uphold a trial court's determination if it examines the relevant facts, applies a proper legal standard and, in a rational process, reaches a conclusion that a reasonable judge could reach." *Ibid.*

¶ 4.   As the trial court recognized, the major thing that makes the proposed class unmanageable is that the statistics upon which the class must rely were generated in the first instance by the proposed class-members. As we have seen, plaintiffs contend that members of the proposed class were denied promised compensation for working when they were entitled to a break—either to eat or for rest. But whether an employee was on a break or working through, either wholly or partially, the break to which he or she was entitled was, before February of 2001, determined by that employee's own time-clock entries.[2] Wal-Mart contends, and the plaintiffs do not dispute, that not all

___

[2] In February of 2001, Wal-Mart employees were told that they were no longer "required to clock out or clock in from breaks."

229

employees were scrupulously accurate in clocking-in or clocking-out. Indeed, Wal-Mart had a time-adjustment process that permitted employees to seek to correct their clock-out/clock-in entries, and submitted to the trial court what Wal-Mart represents is a random sample of more than 125 Wisconsin Wal-Mart employees who indicated that they used the time-adjustment process in connection with their time-clock entries, including reporting of breaks. Additionally, Hermanson, one of the current named-plaintiffs, admitted during her deposition that there were times when she did not clock-out or clock-in for breaks, and that "[t]here were times" when she would submit a time-adjustment request to report that. Further, one of the original named-plaintiffs testified at her deposition that at the Milwaukee store where she worked she had "heard of misuse of the time clock" where some employees would make time-clock entries for other employees.

¶ 5. Although the plaintiffs attempt to characterize the trial court's "manageability" analysis as an inquiry into "why" an employee might have missed a break, the issue is not "why" but *whether* the employees' self-generating data accurately reflect that a break was missed at all. Moreover, plaintiffs do not dispute Wal-Mart's assertion in its brief on this appeal that "since February 2001, there are no records that reflect whether an [employee clocked-out] for a break, much less whether the [employee] actually took the break or voluntarily skipped all or part of it." They argue, rather, that they can make their class-action case through statistical analysis of Wal-Mart data, and they submitted an affidavit by a professor in Emory University's Department of Psychology opining that he could combine and compare the multiple threads of Wal-Mart data in Wisconsin and other states, and that his "pre-

liminary analyses reveal instances of employees who worked longer cash register shifts than was indicated by their edited timekeeper and payroll records." He also opined:

> The anticipated production by Wal-Mart of all of the fields in the Point-of-Sale database and the other time-stamped databases generated by each store's Telxon scanners and computer workstations will permit the comparison of a wide range of time-marked employee activities with the time-clock attendance and payroll records of a broad range of each store's employees from receiving, to inventorying to selling. All work times identified by time-marked employee actions recorded in any one of the numerous data collection systems operating in each store can be compared to the daily time-clock [check-outs or check-ins], edits and additions. All electronic database entries are both employee-number identified and time marked, thereby creating an electronic trail of much of the employee work activity. Therefor, [sic] instances of unpaid off-the-clock work are readily distinguishable from paid work within the computer records.

The professor also indicated that for the time for which "complete electronic data no longer exist," he could develop "models by which the results of the analyses may be extrapolated back to the earlier time periods." As to what he calls the "some off-the-clock work for which there is neither an electronic trail nor a paper trail," he said he would use "questionnaires submitted to the current and former hourly employees to obtain their recollections of such additional unpaid work," and that in his "professional opinion . . . the recall of specific, well-defined events within one's personal experience are [sic] capable of reliable and trustworthy recollection."

231

¶ 6. The class-action process permitted by Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 803.08 does not trump a defendant's jury-trial right under article I, section 5 of the Wisconsin Constitution, which preserves "inviolate" the "right of trial by jury." *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 224–227, 556 N.W.2d 326, 333–334 (Ct. App. 1996).[3] "This means that the parties to a class-action lawsuit have the right to have all 'juriable issues' decided by the same jury." *Id.*, 205 Wis. 2d at 226, 556 N.W.2d at 333 (quoted source omitted). At the very least that means that Wal-Mart has the right to have a jury decide whether:

- the records generated by the members of the proposed class that underlie many of the proposed-class's claims are accurate; and

- any extrapolation, as projected by the Emory psychology professor, is valid—not only with respect to the statistical methodology, but, also, and critically, the accuracy of what the professor calls in his affidavit "the recall" by Wal-Mart's "current and former hourly employees" of their employment

---

[3] Article I, section 5 of the Wisconsin Constitution reads in full:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

The Seventh Amendment to the United States Constitution, which is similar, does not apply to the states. *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 225, 556 N.W.2d 326, 333 (Ct. App. 1996).

> check-in and check-out times during their Wal-Mart careers, because, as the professor's affidavit concedes, any extrapolation depends on the employees' "reliable and trustworthy recollection."

Simply put, Wal-Mart is entitled to have the plaintiffs' statistical conclusions and all the underlying data tested by discovery and examination at trial. Although the Wal-Mart data would be admissible against Wal-Mart at any trial, either as a statement by a party opponent under WIS. STAT. RULE 908.01(4)(b)1–4, *see State ex rel. N/S Assocs. v. Board of Review*, 164 Wis. 2d 31, 57 n.8, 473 N.W.2d 554, 564 n.8 (Ct. App. 1991), or under WIS. STAT. RULE 908.03(6) (business records), Wal-Mart would not, of course, be foreclosed from challenging the accuracy of that data, especially because much of it was generated in the first instance by the members of the proposed class. Indeed, the plaintiffs concede that Wal-Mart could challenge both the "credibility and weight of the evidence." As Judge Wells cogently recognized, this would require not only the examination of each and every member of the proposed class, but, also, their co-workers and supervisors, and, in some or many cases, their friends and family. An unexecuted affidavit by the Emory professor in the Record estimates that "there are 86,795 former and present [Wal-Mart] employees in Wisconsin, of which 23,911 are 'Active' current employees." To say that such a trial would be unmanageable is somewhat akin to saying that the sun is warm or that the universe is large. *Cf. Markweise*, 205 Wis. 2d at 227, 556 N.W.2d at 333–334 ("[It] would be nigh impossible to have one jury decide all the issues for *each* member of the class—such a trial could take years, far beyond the constitution of the most stalwart of our citizens.") (emphasis in original; cryptosporidium poisoning, with issues of causa-

tion and damages). The trial court did not erroneously exercise its discretion in refusing to certify the class, and, accordingly, we affirm.

*By the Court.*—Order affirmed.