In the
United States Court of Appeals
For the Seventh Circuit

No. 01-8003
John D. Szabo, doing business as Zatron,

Plaintiff-Appellee,

v.

Bridgeport Machines, Inc.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:00cv200--William C. Lee, Chief Judge.

Submitted April 4, 2001--Decided May 4, 2001

  Before Posner, Easterbrook, and Williams, Circuit
Judges.

  Easterbrook, Circuit Judge.  The district court
has certified a nationwide class of all persons
who since the beginning of 1996 have bought
machine tools that include a "DX-32 Control Unit"
manufactured by Bridgeport Machines. 2001 U.S.
Dist. Lexis 308 (N.D. Ind. Jan. 12, 2001). The DX-
32 unit combines computer hardware and software
to direct machine tools in performing complex
tasks, such as milling metal in three dimensions.
Plaintiff John Szabo believes that all DX-32
units sold during the past five years are
defective and that Bridgeport (or its agents)
also committed fraud in describing to customers
the abilities (and limitations) of milling
machines equipped with DX-32 units. According to
Szabo the class contains "hundreds" of customers,
and the complaint seeks more than $100,000 from
Bridgeport in damages for each. Bridgeport has
filed a petition under Fed. R. Civ. P. 23(f) and
Fed. R. App. P. 5 asking us to review the
district court's order certifying the class.

  A nationwide class in what is fundamentally a
breach-of-warranty action, coupled with a claim
of fraud, poses serious problems about choice of
law, the manageability of the suit, and thus the
propriety of class certification. See In re
Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir.
1995). The warranty action is itself governed by
Connecticut law, as each contract provides.
(Connecticut is Bridgeport Machines' home state.)

But claims for fraud and negligent misrepresentation may depend on who made the representations, where, and on whose behalf. Most of the machine tools apparently were sold, and the representations in question made, by Bridgeport's distributors rather than by Bridgeport's own employees. Were these representations made with Bridgeport's approval (or knowledge)? If so, then Connecticut law might apply across the board (as the district court concluded), but if not then the applicable law likely would be supplied by the state in which the statements were made. Connecticut law recognizes negligent misrepresentation as a distinct tort. D'Ulisse-Cupo v. Notre Dame High School, 520 A.2d 217, 223-25 (Conn. 1987). Indiana, where Szabo purchased and uses his milling machine, does not. Darst v. Illinois Farmers Insurance Co., 716 N.E.2d 579, 584 (Ind. App. 1999). States also differ substantially in their willingness to permit buyers of commercial products to recover in tort for defects that are covered by warranties. Compare GTE Mobilnet of South Texas LP v. Texas Cellular, Inc., 955 S.W.2d 286 (Tex. App. 1997), with Creative Demos, Inc. v. Wal-Mart Stores, Inc., 142 F.3d 367 (7th Cir. 1998) (Indiana law). Differences of this kind cut strongly against nationwide classes, as we held in Rhone-Poulenc Rorer. Moreover, oral representations may vary substantially from one dealer (or occasion) to another, destroying the commonality of the claims. See, e.g., Nagel v. ADM Investor Services, Inc., 65 F. Supp. 2d 740, 746 (N.D. Ill. 1999), affirmed, 217 F.3d 436 (7th Cir. 2000). To top this off, the DX-32 control units may work differently in different machine tools, and they may do well for some kinds of work (with a given tool) even if they are unsuited to others. These and other potential sources of variation account for the fact that few warranty cases ever have been certified as class actions--let alone as nationwide classes, with the additional choice-of-law problems that complicate such a venture.

The district judge recognized that the request for class certification presented difficult problems, and that on key points Szabo's position had been contested. Szabo asserts, for example, that all oral representations by all Bridgeport distributors everywhere have been either authorized or ratified by Bridgeport itself; Bridgeport contends that this is untrue. Resolution of this dispute is vital to any sensible decision about class certification. Szabo contends that the DX-32 unit is unsuited to any machine tool with which it may be mated; Bridgeport contends that its operation depends at least in part on the tool it is controlling. Again the propriety of a class comprising all

buyers of all machine tools that include DX-32 control units depends on the outcome of this disagreement. There are other important disputes that we need not discuss, for the district court handled all of them in the same way: the judge assumed that whatever Szabo alleges must be true. Proceeding as if class certification under Rule 23 were governed by the same principles as evaluating the sufficiency of the complaint under Rule 12(b)(6), the district judge stated:

since the class determination is made at the pleading stage of the action, the substantive allegations in the complaint are accepted as true for purposes of the class motion. In re Synthroid Marketing Litig., 188 F.R.D. 287, 290 (N.D. Ill. 1999); Jefferson v. Security Pacific Financial Svcs., Inc., 161 F.R.D. 63, 66 (N.D. Ill. 1995).

2001 U.S. Dist. Lexis 308 at *7. The opinion contains several variations on the same theme, such as:

Bridgeport relies on Szabo's deposition, wherein he indicated that numerous oral representations were made to him by Bridgeport's alleged agent (Advanced Machinery), as well as a demonstration of the product. Bridgeport then concludes that Szabo's claim is one based on oral misrepresentations, which oral misrepresentations would be different for each potential Class member, and, therefore, class certification is not permissible. Clearly, Bridgeport is forgetting that this court must accept the substantive allegations of Szabo's complaint as true. In re Synthroid Mktg. Litig., 188 F.R.D. 287, 290 (N.D. Ill. 1999).
Id. at *15. And this passage:

[The court follows] the principle that, in ruling on a class certification, the question is 'whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23. . . .' Eggleston v. Chicago Journeymen Plumbers' Local No. 130, 657 F.2d 890, 895 (7th Cir. 1981) (emphasis added). . . . Bridgeport is not permitted, at this stage, to contest the validity of [Szabo's] theory that the local dealer with whom [Szabo] dealt was Bridgeport's agent.

Id. at *40. In sum, the district judge certified the class without resolving factual and legal

disputes that strongly influence the wisdom of class treatment. The judge stated that he had no other option.

For two reasons, we have granted Bridgeport's request for discretionary appellate review under Rule 23(f). First, the class certification turns a $200,000 dispute (the amount that Szabo claims as damages) into a $200 million dispute. Such a claim puts a bet-your-company decision to Bridgeport's managers and may induce a substantial settlement even if the customers' position is weak. This is a prime occasion for the use of Rule 23(f), not only because of the pressure that class certification places on the defendant but also because the ensuing settlement prevents resolution of the underlying issues. See Blair v. Equifax Check Services, Inc., 181 F.3d 832, 834-35 (7th Cir. 1999). Accepting an appeal in a big-stakes case is especially appropriate when the district court's decision is problematic, as it is here. Second, the district court's decision to certify the class implies that important legal principles have evaded attention by appellate courts. Id. at 835. At critical junctures the district judge cited only decisions by other district judges, most in cases later settled and thus not subject to appellate consideration. By granting review now, we can consider whether these cases correctly understood the applicable principles.

Which, we hold, they did not. The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it. The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its factual sufficiency will be tested later--by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23. This would be plain enough if, for example, the plaintiff alleged that the class had 10,000 members, making it too numerous to allow joinder, see Rule 23(a)(1), while the defendant insisted that the class contained only 10 members. A judge would not and could not accept the plaintiff's assertion as conclusive; instead

the judge would receive evidence (if only by affidavit) and resolve the disputes before deciding whether to certify the class. What is true of disputes under Rule 23(a)(1) is equally true of disputes under Rule 23(b)(3). A court may certify a class under Rule 23(b)(3) only if it finds that all of the prerequisites (such as numerosity) have been demonstrated, and in addition

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Questions such as these require the exercise of judgment and the application of sound discretion; they differ in kind from legal rulings under Rule 12(b)(6). And if some of the considerations under Rule 23(b)(3), such as "the difficulties likely to be encountered in the management of a class action", overlap the merits--as they do in this case, where it is not possible to evaluate impending difficulties without making a choice of law, and not possible to make a sound choice of law without deciding whether Bridgeport authorized or ratified the dealers' representations--then the judge must make a preliminary inquiry into the merits.

Courts make similar inquiries routinely under Rule 12(b)(1) and 12(b)(2) before deciding whether they possess jurisdiction over the subject matter of the case and the persons of the defendants, the location of the proper venue, application of forum non conveniens, and other preliminary issues. Often personal jurisdiction is closely linked to the nature, and merit, of the claim being asserted, see, e.g., Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031 (7th Cir. 2000), but this does not mean that the judge will just take the plaintiff's word about what happened. Nor will the court accept the plaintiff's say-so when deciding how much could be recovered (and thus

whether the amount in controversy for diversity jurisdiction is present), even though the maximum recovery depends strongly on the merits. See, e.g., Pratt Central Park Limited Partnership v. Dames & Moore, Inc., 60 F.3d 350 (7th Cir. 1995). When jurisdiction or venue depends on contested facts--even facts closely linked to the merits of the claim--the district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed. A motion under Rule 12(b)(6) is unique in requiring the district judge to accept the plaintiff's allegations; we see no reason to extend that approach to Rule 23, when it does not govern even the other motions authorized by Rule 12(b).

The district judge thought that Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), adopts the approach of Rule 12(b)(6) for decisions under Rule 23. We do not read Eisen so. The Court observed that the 1966 amendment to Rule 23 departed from the earlier handling of class claims by placing certification ahead of a decision on the merits. A class thus can lose as well as win, while in a permissive-intervention system the case is decided on the merits before the identities of the parties to be bound are known. The success of the 1966 amendments (which are still in force) depends on making a definitive class certification decision before deciding the case on the merits, and on judicial willingness to certify classes that have weak claims as well as strong ones. A court may not say something like "let's resolve the merits first and worry about the class later" (Rule 23(c)(1) requires the certification decision to be made "[a]s soon as practicable after the commencement of an action brought as a class action") or "I'm not going to certify a class unless I think that the plaintiffs will prevail." But nothing in the 1966 amendments to Rule 23, or the opinion in Eisen, prevents the district court from looking beneath the surface of a complaint to conduct the inquiries identified in that rule and exercise the discretion it confers. Plaintiffs cannot tie the judge's hands by making allegations relevant to both the merits and class certification. We said as much in Eggleston: "Eisen has not been interpreted so broadly . . . as to foreclose inquiry into whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23 as distinguished from an inquiry into the merits of plaintiff's particular individual claim." 657 F.2d at 895.

The district court's approach, by contrast, is reminiscent of the "across-the-board" rule jettisoned by General Telephone Co. v. Falcon, 457 U.S. 147 (1982). In circuits following the

across-the-board rule, district judges were required to assume that all members of a proposed class were situated similarly to plaintiff and to certify classes "across the board." Falcon held, however, that similarity of claims and situations must be demonstrated rather than assumed. The Court pointedly observed that "sometimes it may be necessary for the court to probe beyond the pleadings before coming to rest on the certification question. . . . [A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." 457 U.S. at 160. That is equally true of Rule 23(b). Certifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys-- who may use it in ways injurious to other class members, as well as ways injurious to defendants. Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations.

Szabo's proposed class is highly problematic, for reasons given in Rhone-Poulenc Rorer and sketched above. Nagging issues of choice of law, commonality, and manageability beset this case. It is unlikely that dealers in different parts of the country said the same things to hundreds of different buyers. (Szabo stresses that Bridgeport accepted each order at its home office, but this does not demonstrate that Bridgeport knew of or ratified any particular representation by any given dealer.) It is unlikely that other models of milling machines exhibit the same problems that Szabo says that the DX-32 unit has caused in his model. And it is unnecessary to certify a nationwide class. Each buyer has a substantial claim, of the sort that could be, and often is, pursued independently. If any class treatment is appropriate, a class limited to a single state (or customers of a single dealer) would be more practical--though buyers in a single state (or of a single kind of machine) may be too few to justify class treatment. Now that the district court is free to pierce the allegations of the complaint, it may find these and other daunting obstacles good reasons to deny Szabo's request for class certification or certify a more limited class. The order certifying the class accordingly is vacated, and the case is remanded for further proceedings consistent with this opinion.