**2019 WI App 53**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP1836

Complete Title of Case:

**ELIZABETH HARWOOD,**

**PLAINTIFF-RESPONDENT,**

**V.**

**WHEATON FRANCISCAN SERVICES, INC., WHEATON FRANCISCAN
MEDICAL GROUP, INC. AND WHEATON FRANCISCAN HEALTHCARE -
ST. FRANCIS, INC.,**

**DEFENDANTS-APPELLANTS.**

| | |
|---|---|
| Opinion Filed: | August 20, 2019 |
| Submitted on Briefs: | April 11, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, P.J., Kessler and Brennan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the brief of *Mark E. Larson* and *Bradley S. Foley* of *Gutglass, Erickson, Bonville, & Larson, S.C.*, Milwaukee. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert J. Welcenbach* of *Welcenbach Law Offices, S.C.*, Milwaukee, *Scott Borison* of *Legg Law Firm LLC*, Frederick, MD, and *John Craig Jones* of *Jones & Hill, LLC*, Oakdale, LA. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1836**

Cir. Ct. No. **2017CV12998**

## STATE OF WISCONSIN

## IN COURT OF APPEALS

---

ELIZABETH HARWOOD,

      PLAINTIFF-RESPONDENT,

  V.

WHEATON FRANCISCAN SERVICES, INC., WHEATON FRANCISCAN MEDICAL GROUP, INC. AND WHEATON FRANCISCAN HEALTHCARE - ST. FRANCIS, INC.,

      DEFENDANTS-APPELLANTS.

---

      APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed*.

      Before Brash, P.J., Kessler and Brennan, JJ.

¶1 BRENNAN, J. Wheaton Franciscan Services, Inc., (Wheaton Franciscan)[1] and two other defendants appeal an order certifying a class and appointing plaintiff Elizabeth Harwood as class representative. Harwood alleged that Wheaton Franciscan violated WIS. STAT. § 146.83(3f)(b)4.-5. (2017-18)[2] by charging Harwood and others at least $28 each in illegal added fees for copies of their health records.[3] Harwood moved to certify a class that included all persons in Wisconsin who were Wheaton Franciscan patients (or persons they authorized in writing to obtain their medical records) who were charged retrieval fees or certification fees for the six years preceding the filing of the complaint. The proposed class excluded certain persons and entities, including any persons who did not pay the fees.

¶2 The trial court decided the motion, applying the newly revised version of the class certification rule, WIS. STAT. § 803.08, which went into effect after this action was filed. The parties do not dispute the application of the current statute and they do not dispute that it was adopted with the express purpose of harmonizing Wisconsin's class action statute with the federal class action statute and federal case law. They dispute only

---

[1] Three entities are named as defendants: Wheaton Franciscan Services, Inc.; Wheaton Franciscan Medical Group, Inc.; and Wheaton Franciscan Healthcare–St. Francis, Inc. We refer to an individual defendant by name only where necessary to describe its particular actions. Otherwise, we refer to defendants collectively as "Wheaton Franciscan."

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] WISCONSIN STAT. § 146.83 states that, with an exception that is not relevant here, "a health care provider may charge no more than" the amounts specified in the statute for paper copies, microfiche or microfilm, X-ray prints, and applicable shipping costs and applicable taxes. *See* § 146.83(3f)(b)1.-3., 6. Only if the requester is someone *other than* "the patient or a person authorized by the patient" may health care providers also charge retrieval and certification fees—"a single $8 charge" for certification and "a single retrieval fee of $20[.]" Sec. 146.83(3f)(b)4.-5. The complaint alleges that in providing requested copies of health records, the defendants had "routinely charg[ed] *patients or persons authorized by the patient*, an $8.00 certification fee, a $20.00 retrieval fee, processing, basic or other fees not authorized by the statute" (emphasis added).

whether the trial court erroneously exercised its discretion when it ruled that Harwood had satisfied the requirements for the class to be certified under the current version.

¶3      The trial court rejected Wheaton Franciscan's arguments as "represent[ing] defenses to the merits of the Plaintiff's case [that] do not preclude certifying the class," and quoted ***Messner v. Northshore University HealthSystem***, 669 F.3d 802, 811 (7th Cir. 2012), which stated that "[a] court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."  Its decision focused on the fact that Harwood had "provided a list of forty-four invoices, as well as the invoices themselves with the patient names redacted, representing separate clients … that have been allegedly charged improper fees for certified medical records in violation of WIS. STAT. § 146.83."

¶4      Noting that the revised class action statute that took effect July 1, 2018,[4] "imposes more stringent requirements than the prior version of WIS. STAT. § 803.08 and applicable case law," the trial court concluded that Harwood had satisfied the requirements—that the proposed class is large enough to make it impractical to proceed without a class action, that the members of the proposed class share a common interest, that Harwood's claim is typical of the claims of the class, and that Harwood, the named party, will provide adequate representation to the proposed class.  The trial court further concluded that "questions of law and fact predominate over any questions affecting only individual members, and that a class action is superior to individual actions for fairly and efficiently adjudicating the controversy."  It therefore certified the class.

---

[4] On December 21, 2017, WIS. STAT. § 803.08 was repealed and recreated by Supreme Court Order with the stated purpose of aligning the statute with the federal class action Federal Rules of Civil Procedure Rule 23.  The revisions took effect on July 1, 2018, and our supreme court left to the discretion of the circuit courts whether application of the reformed statute "would not be feasible or would work injustice" to any pending proceeding within the court.  The statute was then further revised by the legislature (2017 Wis. Act 235), but that revision has no bearing on this case.

¶5 The revised class certification rule directed Wisconsin courts to look to federal case law for guidance. Just like Wisconsin law, federal appellate courts "review class-certification decisions deferentially, in recognition of the fact that [Federal Rule of Civil Procedure] 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate." ***Ervin v. OS Rest. Servs., Inc.***, 632 F.3d 971, 976 (7th Cir. 2011) (citation omitted). Federal appellate courts will "reverse the class-certification decision only when [they] find an abuse of discretion." ***Id.*** For the reasons set forth, we conclude that the trial court correctly considered the relevant facts, applied the legal standard set forth in the newly revised WIS. STAT. § 803.08 consistent with federal law on class certification, kept its analysis focused on the class certification question, and reached a reasonable decision. We affirm.

## BACKGROUND

¶6 Because Wheaton Franciscan challenges the trial court's ruling as an erroneous exercise of discretion, we include a detailed background section to make clear what evidence and arguments the parties presented to the trial court prior to its decision to certify the class.

¶7 Harwood was injured in a car accident in August 2015 and filed a personal injury claim. She signed HIPAA releases[5] authorizing the release of medical information to her attorneys. Harwood's attorneys requested certified medical bills from Wheaton Franciscan - St. Francis and provided the HIPAA release signed by Harwood to evidence her written consent. Wheaton Franciscan Services responded to the request and charged

---

[5] "HIPAA" stands for Health Insurance Portability and Accountability Act. A HIPAA release form is a type of form wherein a patient consents to the release of his or her health care information to a third party.

$31.14 to be paid to Wheaton Franciscan Medical Group. Harwood's attorneys paid the charges to obtain the certified medical bills.

¶8 Harwood's attorneys also requested certified medical records from St. Francis Hospital, again providing the HIPAA release signed by Harwood. Wheaton Franciscan Services responded to the request on behalf of St. Francis Hospital and charged $61.31 to be paid to "St. Francis." Again, Harwood's attorney paid the fee to obtain her certified medical records. Harwood reimbursed her attorneys "for all charges incurred from [Wheaton Franciscan]."

¶9 Harwood alleged in the complaint that Wheaton Franciscan charged Harwood and others "a certification fee, processing fee, basic or retrieval fees" for both medical record requests made by Harwood's attorneys, who were persons authorized in writing by Harwood to access that information. In the class certification motion, Harwood provided copies of forty-four invoices from Wheaton Franciscan entities that showed the certification and retrieval charges for health care record requests that had been made by persons who authorized counsel in writing to request the records.

¶10 Harwood served on Wheaton Franciscan requests for admission.

¶11 In response to Request No. 3—"Admit that you charged a person authorized in writing by Elizabeth Harwood basic, processing, certification or retrieval fees"—two of the Wheaton Franciscan entities[6] provided the following response:

---

[6] Wheaton Franciscan Healthcare–St Francis, Inc., and Wheaton Franciscan Medical Group, Inc. provided identical responses to the first set of requests for admission. The third entity, Wheaton Franciscan Services, Inc., responded to both above requests: "Object to the form and foundation. Subject to the objections, Wheaton Franciscan Services, Inc. did not and does not process, respond to, or charge for release of any medical information and therefore denies this and all the following requests for admission."

Object to the form and lack of foundation. Subject to the objections and assuming the reference is to [Harwood's counsel], admits that statutorily allowed certification and retrieval fees, as well as statutorily allowed copying fees, were charged. Denies that any charges for basic or processing fees were presented.

¶12 In response to Request No. 9—"Admit that since July 1, 2011, you charged at least 100 persons authorized in writing by the patient a certification, processing, basic or retrieval fee to obtain the patient's medical records"— the Wheaton Franciscan entities provided the following response:

Object to the form, lack of foundation, and being beyond the scope of the plaintiff's claim. Subject to the objections, this defendant cannot reasonably ascertain as to whether or not this request is true.

¶13 Harwood also issued a first set of interrogatories that included a question as to who handled the relevant invoicing, and the same Wheaton Franciscan entities (in a jointly filed response) answered that "Wheaton Franciscan Healthcare–St. Francis, Inc. personnel processed the request for medical records and Wheaton Franciscan Medical Group personnel processed the request for medical billing." Asked whether defendants "made any errors or mistakes in connection with" the relevant invoices, the entities answered, "[I]f an error includes an interpretation of the law retrospectively determined to be erroneous, it was made in good faith." Asked to identify the methodology Wheaton Franciscan used to determine when to charge basic fees, retrieval fees, processing fees, and certification fees, the Wheaton Franciscan entities first "den[ied] that these answering defendants charged a basic fee or processing fee[,]" then added the following: "Based on information discovered to date … and based on state Department of Health Services and Wisconsin Health Information Management Association guidance."

**Harwood's class certification motion.**

¶14 On February 23, 2018, Harwood filed her class certification motion.

¶15    On March 30, 2018, Wheaton Franciscan moved the trial court to stay proceedings pending a decision by this court in a separate case that also involved class certification issues. The trial court granted Wheaton Franciscan's motion to stay proceedings in part, permitting plaintiff to issue interrogatories. After the separate case resolved in a way that did not affect the questions presented in this case, the trial court lifted the stay and set a briefing schedule and a motion hearing.

¶16    In its brief opposing the class certification motion, Wheaton Franciscan objected to certification in part based on its contention that certification was premature because the proposed certification "raises several other issues that need to be explored in discovery[.]"

¶17    First, Wheaton Franciscan argued that it was unclear whether the holding in ***Moya v. Aurora Healthcare, Inc.***, 2017 WI 45, ¶2, 375 Wis. 2d 38, 894 N.W.2d 405, "permits any attorney with a client with a valid HIPAA authorization to be a participant in the proposed class, including attorneys representing defendants in personal injury actions." ***Moya*** addressed the question of "whether *an attorney whose client authorized him* via a HIPAA release form to obtain her health care records *may benefit from this fee exemption*." ***Id.*** (emphasis added, footnote omitted). Our supreme court answered that such an attorney may do so: "[A]n attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person authorized by the patient' under WIS. STAT. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions." ***Id.***

¶18    Second, Wheaton Franciscan argued that it was as yet undetermined "whether the fees charged were based on good faith guidance."

¶19    Third, Wheaton Franciscan argued that it was undetermined whether Harwood was an adequate representative because, "[f]or example, she listed her residence as being in Milwaukee, but she in fact resides in Oak Creek, Wisconsin."

¶20    Fourth, Wheaton Franciscan argued that it was undetermined how many of the forty-four Wheaton Franciscan invoices were actually paid.

¶21    Wheaton Franciscan also argued that further discovery was necessary. It argued that this case was analogous to the facts in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001), in which the appellate court reversed the district court's sweeping class certification[7] and remanded for further proceedings, inviting the district court "to deny Szabo's request for class certification or certify a more limited class." *Id.* at 678. The flaw in the district court's analysis, *Szabo* held, was that it had accepted as true all of the complaint's allegations when deciding whether to certify the class. *Id.* at 675. Wheaton Franciscan quoted the following language from *Szabo*:

> Certifying classes on the basis of incontestable *allegations in the complaint* moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants. Both the absent class members and defendants are entitled to the protection of *independent judicial review of the plaintiff's allegations.*

*Id.* at 677 (emphasis added). In a sur-reply brief, Wheaton Franciscan further argued that WIS. STAT. § 803.08, the statute governing class actions, had been "substantively changed" by the revisions enacted by the Wisconsin Supreme Court Order to harmonize Wisconsin law with federal law and that this change "undermin[ed] the legal basis" for

---

[7] The *Szabo* district court had certified a nationwide class; the appellate court held that "[i]f any class treatment is appropriate, a class limited to a single state (or customers of a single dealer) would be more practical." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 678 (7th Cir. 2001).

granting plaintiff's motion. Noting that the Judicial Council had stated that its "intent was to craft a Wisconsin class action rule that tracks as closely as possible federal practice so that Wisconsin courts and practitioners can look to the well-developed body of federal case law interpreting [Federal Rule of Civil Procedure] 23 for guidance," *see* Judicial Council Committee Notes, 2017, § 803.08, Wheaton Franciscan argued that federal case law required more discovery before a ruling on class certification in this case. Finally, it argued that in addition to the four requirements a plaintiff must satisfy, federal courts had recognized a fifth requirement of "ascertainability," and that federal case law had recently adopted a more rigorous ascertainability requirement, creating a heightened standard for plaintiffs to meet. It cited language from cases that imposed on plaintiffs additional burdens of proof about ascertainability—a 2014 Wisconsin district court case and a 2012 Third Circuit case, *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3rd Cir. 2012).

¶22 At the motion hearing, Harwood argued that she had satisfied the requirements of WIS. STAT. § 803.08.

¶23 The statute requires the plaintiff to first establish three facts about the proposed class and the representative—referred to as numerosity, commonality, and typicality—and one fact about the plaintiff's ability to represent the class. A plaintiff must show that:

> (a) The class is so numerous that joinder of all members is impracticable.
>
> (b) There are questions of law or fact common to the class.
>
> (c) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (d) The representative parties will fairly and adequately protect the interests of the class.

WIS. STAT. § 803.08(1).

¶24 The statute next requires that the trial court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." WIS. STAT. § 803.08(2)(c). These are referred to as the predominancy and superiority requirements. The statute states that "[t]he matters pertinent to these findings include":

> 1. The class members' interests in individually controlling the prosecution or defense of separate actions.
>
> 2. The extent and nature of any litigation concerning the controversy already begun by or against class members.
>
> 3. The desirability or undesirability of concentrating the litigation of the claims in the particular forum.
>
> 4. The likely difficulties in managing a class action.

*Id.*

¶25 Harwood argued that she satisfied the first four requirements of WIS. STAT. § 803.08(1). She argued that the forty-four invoices she had filed with the trial court showed "at least 40 different times where [Wheaton Franciscan patients] were charged the fees that we are contesting were illegally charged."[8] Harwood argued the forty-four invoices satisfied the numerosity requirement because it would be impractical to join forty-four individuals in this action. She argued that the commonality requirement was met because under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), the test for

---

[8] She noted that at least one of the invoices in the exhibit was dated August 2017, which was evidence that refuted defendants' claim that after May 2017 they had stopped billing certification and retrieval charges to attorneys who requested health records pursuant to a client's written HIPAA release.

10

commonality is whether there is "cause to believe that all [class members'] claims can be productively litigated at once." *Dukes* held that the plaintiff's alleged common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Harwood argued that she "has the same identical claim" as the other class members and thus, the answers to each of the relevant parts of the plaintiff's claim and defendants' defenses—whether there were illegal charges, whether they were charged intentionally or negligently, whether there was unjust enrichment, whether the charges were made in good faith—would be the same. For the same reasons, Harwood argued, the typicality requirement was met. She argued that she was an adequate class representative because "[s]he has the same interests of the class," which is that "[s]he would like her money back. She would like the illegal fees back; that's what the class would want." Additionally, Harwood's counsel argued that he is adequate to represent the class in this case based on past experience with class action suits.

¶26 Harwood argued that she also satisfied the predominancy and superiority requirements of WIS. STAT. § 803.08(2)(c). She argued that "the common issues resolve all of the claims…. [N]ot only are they predominant, they are the only issues before the [c]ourt." As to whether class action was "superior to other available methods for fairly and efficiently adjudicating the controversy," she started by referencing the reasoning of *Cruz v. All Saints Healthcare System, Inc.*, 2001 WI App 67, 242 Wis. 2d 432, 625 N.W.2d 344, which also concerned alleged overcharging of patients in violation of WIS. STAT. § 146.83. In that case, this court held:

> We believe that given the economic realities of this case, class action may be the only effective means to implement the legislature's intent to provide redress for unreasonable charges…. The individual amounts at issue are small and not likely to justify individual suits. These economic factors make this case ideally

> suited to class action. Here, the aggregation of small claims, when joined as a class, becomes worthwhile to litigate.

*Cruz*, 242 Wis. 2d 432, ¶9.

¶27 Harwood argued that class action was a superior method for adjudicating the claims:

> The real issue is that [defendants] are betting if the [c]ourt denies the class, that these people will not be in a position to bring a claim. They will not be able to find a lawyer who is willing to go forward on a claim and keep in mind, the actual damage claim is roughly $28. The likelihood of them finding a lawyer who is willing to step in a case over $28 is so low, and that's what the *Cruz* court found significant as to why it was important[.]

¶28 Finally, Harwood noted that "the manageability of this class is pretty straightforward because every single charge is reflected on an invoice that the Defendant has. They sent the invoices so we know the name of the person and what they charged. This is not going to be a complicated case in that sense."

¶29 In response, Wheaton Franciscan reiterated its argument that part of the proposed class definition ("[a]ll persons in Wisconsin who: (i) were a patient of the Defendants or a person authorized by a patient of the Defendants in writing to obtain the patient's medical records") included "a person authorized by a patient," while *Moya* held only that "an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person authorized by the patient' under WIS. STAT. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions." *See Moya*, 375 Wis. 2d 38, ¶2. Wheaton Franciscan further argued that the class should not be certified because it had offered an affidavit of the CEO stating that one of the defendants "had nothing to do with any of this in this case[.]" Wheaton Franciscan stated that the plaintiff's proposed class included those who were charged retrieval or certification fees by the defendants "directly or

indirectly," and counsel argued that the class should not be certified because defendants "don't know what directly or indirectly means."

¶30     Wheaton Franciscan argued that Harwood had not satisfied the statutory requirements for certification. It argued the numerosity requirement was not supported because one of the forty-four invoices presented was from Wheaton Franciscan–St. Joseph Campus, an entity that does not have any relationship to the named defendants, and one of the invoices came from Wheaton Franciscan–Franklin, and "some further exploration" was needed to determine whether it was a separate entity. As to commonality, it argued that it was not satisfied because "given the factual questions that are being presented at this time[,]" the resolution of the litigation would not generate common answers for the class. It argued that the typicality requirement was not satisfied: "We are not basing on the same legal theory here at this point in time." It argued that the adequacy of Harwood to represent the class and whether she had adverse interests to the class was "something that needs to be factually explored" and that her affidavit was an insufficient basis for making that determination. Addressing the superiority requirement, Wheaton Franciscan referenced a pending Wisconsin case against a different defendant relating to health record charges and stated, "At this point in time, we have to sort out these issues to make sure we're not having overlapping classes involved in this case." Wheaton Franciscan made no predominancy argument. Wheaton Franciscan instead merely argued that "[a] round of discovery need[ed] to occur" and stated that "there are a number of legal issues and factual issues that need to be explored in this case[.]" It asked the trial court to deny the motion.

¶31     The trial court noted its familiarity with the legal standards of class certification due to "considerable class action experience as a practicing attorney both in Wisconsin and around the country under the federal rules." It started the hearing by questioning Harwood about whether she had any evidence of numerosity because the trial

court had not seen the affidavit that attached copies of the forty-four invoices. The affidavit was located, and the hearing proceeded. After the parties' arguments, the trial court questioned Harwood about proof of damages as to each member of the class, the relevance of wrongly named defendants, and the proposed class's exclusion for persons charged by Ciox and IOD, third-party providers who manage record requests and charge people for them. Harwood explained that this lawsuit involved only people directly billed for health records by Wheaton Franciscan. For example, Harwood noted that Ciox was named as a defendant in a separate suit, and by excluding from the class persons who had been charged by Ciox, plaintiff ensured that there was no overlap between the cases.

¶32 The trial court stated that it was "tentatively persuaded that this class should be certified." It stated, "I recognize that the federal rule creates a heightened scrutiny based on demonstrable facts and not just pleading" and added, "I think the Plaintiff has done that here with the invoices submitted, and that's the primary evidence because it really goes to all of the issues." It acknowledged the factual issues raised by Wheaton Franciscan, and noted that "most of those go to the merits of the case, potential defenses, inability to prove damages or whatever it might be, but that's not what I'm deciding today." The trial court stated that "because written decisions have the effect of greatly clarifying thought processes," it would not make a ruling from the bench and would instead issue a written decision.

**Decision and order.**

¶33 The written decision certified a class and appointed Harwood the representative.

¶34 The trial court noted that the revised WIS. STAT. § 803.08 took effect after this case and the motion at issue were filed. Nevertheless, the trial court held "that the application of the new rule is both feasible and would not work an injustice" and that

14

under the new rule "there is no prejudice to [Harwood] in applying it." The trial court further stated that the application of the new rule benefited both parties to the extent that "[Wheaton Franciscan] get[s] the benefit of a more rigorous analysis, which in turn corresponds to less appellate risk for [Harwood]." Therefore, it applied the revised version.

¶35 The trial court held that, after reviewing the submissions of the parties and hearing oral argument, the proposed class "met the requirements for class certification" and ordered the class to be certified. It concluded that the numerosity requirement was satisfied, noting the evidence included forty-four invoices and the potential of many more, "considering how many patients and patient records the Defendants deal with on a yearly basis." It concluded that it was impracticable to bring all the interested parties before the trial court without a class action.

¶36 The trial court found that the commonality requirement was satisfied because all of the members of the proposed class "allegedly suffered the same injury— being wrongfully overcharged for retrieval and certification fees[,]" and because "[t]he determination of the truth or falsity of this contention will resolve the issue of liability for all class members." It further noted that all the proposed class members "share the same statutory remedies … for actual and exemplary damages."

¶37 The trial court concluded that the typicality requirement was satisfied because "there are almost identical claims between Ms. Harwood and the proposed class members."

¶38 The trial court concluded that the adequacy requirement was satisfied because it found that Harwood's claim was substantially similar to unnamed class members and her interests were not contrary or antagonistic. It noted Harwood's counsel's experience in this specific area of litigation.

15

¶39     As to predominancy, the trial court concluded that the proposed class all suffered the same alleged harm, and this issue predominated over any questions affecting only individual members.  Given that the case involved small amounts of money at issue for individual claimants, and given that the legislature's prescribed calculations of damages for statute violations would make damages calculations straightforward for class members, the trial court concluded that a class action was superior to any other method of adjudicating the case.

¶40     This appeals follows.

## DISCUSSION

### I.      Standard of review.

¶41     A trial court's decision to grant or deny a motion for class certification is committed to the trial court's discretion.  ***Hermanson v. Wal Mart Stores, Inc.***, 2006 WI App 36, ¶3, 290 Wis. 2d 225, 711 N.W.2d 694.   A trial court exercises its discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion.  ***McCleary v. State***, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).  We affirm discretionary decisions if the trial court applied the correct law to the facts of record and reached a reasonable decision.  ***Hermanson***, 290 Wis. 2d 225, ¶3.  Federal law likewise commits class certification decisions to the discretion of the district courts.  *See **Mullins v. Direct Dig., LLC***, 795 F.3d 654, 659 (7th Cir. 2015).

### II.     Allowable fees for copies of patient health care records.

¶42     The statute allegedly violated in this case is WIS. STAT. § 146.83, which governs access to patient health care records.  Under § 146.83(3f), a health care provider shall, subject to exceptions that are inapplicable here, provide copies of a patient's health

care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." Sec. 146.83(3f)(a).

¶43    Pursuant to WIS. STAT. § 146.83(3f)(b), health care providers may impose certain costs on the person requesting health care records under § 146.83(3f)(a):

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
>
> 2. For microfiche or microfilm copies, $1.50 per page.
>
> 3. For a print of an X-ray, $10 per image.
>
> *4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.*
>
> *5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.*
>
> 6. Actual shipping costs and any applicable taxes.

Sec. 146.83(3f)(b) (emphasis added). According to § 146.83(3f)(b)4. and 5., the patient or a person authorized by the patient are exempt from the certification charge and retrieval fee.

¶44    As noted above, a recent case raised the question of "whether *an attorney whose client authorized him* via a HIPAA release form to obtain her health care records *may benefit from this fee exemption*." **Moya**, 375 Wis. 2d 38, ¶2 (emphasis added, footnote omitted). Our supreme court answered that they may:

> [A]n attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under WIS. STAT. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions.

17

*Id.*

### III. The trial court applied the correct legal standard to the relevant facts and reached a reasonable decision.

¶45     The parties acknowledge that this appeal is subject to an erroneous exercise of discretion standard of review.  We affirm discretionary decisions if the trial court applied the correct law to the facts of record and reached a reasonable decision.

¶46     Wheaton Franciscan does not challenge any findings of fact.  Its arguments all relate to whether the trial court applied the correct law.  First, it argues that the trial court's written decision lacks the "rigorous analysis" required under federal class action law.  Second, it argues that the proposed class includes "any person who requests health records with a patient's written permission," and our supreme court's decision in *Moya* held only that "an attorney who is authorized via a HIPAA release is a 'person authorized by the patient'" under WIS. STAT. § 146.83(3f)(b)4.-5.  Third, it argues that the evidence is insufficient to answer the questions of numerosity, commonality, typicality, and adequacy.  Fourth, it argues that federal law requires that the parties have an opportunity for more discovery before the class certification motion is decided.  We address these arguments in turn.

### A. The trial court carefully analyzed the application of the law to the facts as required by state and federal class action law.

¶47     Wheaton Franciscan spends much of its brief arguing that the similarity of the trial court's order to the language of an order certifying a class in a separate case shows that the trial court did not "exercise independent judgment in its written decision granting the motion to certify the class" and that it "adopted and applied many of the factual and legal determinations of another trial court['s order.]"  Wheaton Franciscan asserts that "the trial court did not engage in an analysis of the facts *specific to this case* in reaching conclusions *specific to this case*."  It argues the trial court's analysis is not the

"rigorous analysis" that federal law requires before certifying a class. *See General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982) ("[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [Federal Rule of Civil Procedure] 23(a) have been satisfied.").

¶48     We have carefully reviewed the record and read the relevant transcripts. *See Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737 ("[W]e may search the record to determine if it supports the court's discretionary decision."). *See also State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983) (if the trial court "fails to set forth its reasoning in exercising its discretion ... the appellate court should independently review the record to determine whether it provides a basis for the trial court's exercise of discretion").

¶49     As reflected in the above description of the hearing and order, the trial court clearly focused on the facts specific to this case and reached conclusions specific to this case.  For example, because the trial court had not seen the affidavit submitted with the copies of the invoices, it started by questioning Harwood about the lack of evidence of numerosity at the outset of the hearing, stating, "Unless I missed it in the Plaintiff's submission, I don't see any evidence pertaining to numerosity."

¶50     After Wheaton Franciscan asserted that two of the forty-four invoices Harwood had submitted came from entities that were separate from the named defendants even though "Wheaton Franciscan" was a part of their names, the trial court questioned Harwood:

> Let me ask another question directly following up on defense counsel's argument.  The idea that there may be wrongly named defendants … I don't believe has bearing on the certification issue.  That may be a defense, but in only one sense does it give me pause which is the numerosity.  If you have 45

invoices and in fact only two of them pertain to named defendants, that might give me concern on numerosity.

Harwood responded that defendants had put forth no evidence that the two entities on the invoices were not truly Wheaton Franciscan entities. The trial court then asked "another numerosity question": "Why in the definition of the proposed class is the Plaintiff excluding Ciox and IOD?" Harwood answered that a separate case with the same legal basis was already pending against others who had overcharged for patient records, and persons who had been billed by those entities are "not going to be a member of this class because they are already [members of the other class]." Harwood explained that this exclusion "addresses" the potential concern that in certifying this class the trial court would inadvertently include class members whose billing claims were being litigated in another action.

¶51 In its eleven-page order, the trial court set forth the applicable legal standards for each statutory requirement and stated a factual basis for concluding that each had been satisfied. We conclude that the record is replete with evidence that the trial court in this case relied on "facts that are of record or that are reasonably derived by inference from the record" and reached "a conclusion based on a logical rationale founded upon proper legal standards." *See McCleary*, 49 Wis. 2d at 277.

### B. The trial court's definition of the class is consistent with *Moya*'s holding because the holding merely confirmed that patient-authorized lawyers are *among* those exempt from certification and retrieval fees.

¶52 Wheaton Franciscan argues that the trial court erred in the scope of the class certified because "[t]he trial court's proposed class is more broad than the *Moya* court's holding." It argues that "[t]he *Moya* court did not address unrepresented patients and the addition of this new class of patients should have not occurred without further investigation, as patients requesting their own records while being provided care may not be charged fees."

20

¶53    We understand Wheaton Franciscan to be arguing that the problem with the class is that it includes more than just lawyers who have obtained HIPAA releases from clients and requested health care records on their behalf—which is what the *Moya* court was focused on.  However, the focus of the class certification is on the question:  who was charged certification and retrieval fees contrary to the statute?  *Moya* answered a different question, and its answer is relevant to this case in only one regard.  Wheaton Franciscan fails to explain how a class that includes verbatim the words of the statute is based on an improper legal standard.  The fact that the *Moya* holding is that an attorney is, for purposes of WIS. STAT. § 146.83, "a person authorized by the patient" reflects only the fact that a defendant had argued that the statute implicitly excluded attorneys.  The statute already provides an answer to the question Wheaton Franciscan appears to imply is unanswered, which is, who qualifies as a "person authorized by the patient"?  The statute contains the relevant definition:

> (5) *"Person authorized by the patient" means* the parent, guardian, or legal custodian of a minor patient … the person vested with supervision of the child … the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, *any person authorized in writing by the patient* or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument.

WIS. STAT. § 146.81(5) (emphasis added).  In *Moya*, the question presented, *see Moya*, 375 Wis. 2d 38, ¶2, was whether attorneys with a HIPAA release form from a patient were included in the category of "any person authorized in writing by the patient."  The court answered that they were.  *Id.*  The *Moya* holding is thus irrelevant to this case other than to establish that the statute means that attorneys who request health records pursuant to a HIPAA release form cannot be charged certification and retrieval fees.  Where the statute plainly states that certain fees cannot be charged to "a person authorized by the patient," and the statute further contains a definition of that phrase that has been held to

include—but not to *solely consist of*—lawyers, there is no reason that the class must be limited to attorneys based on the *Moya* holding.

**C. The trial court's conclusion that the evidence was sufficient to satisfy WIS. STAT. § 803.08(1) requirements of numerosity, commonality, typicality, and adequacy was based on the law and the facts and is reasonable.**

¶54    We start by noting that it is considered to be in the public interest as declared by the legislature to permit class actions when the prerequisites are satisfied. *Mercury Records Prods., Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 490, 283 N.W.2d 613 (Ct. App. 1979). "In the interest of simplifying the lawsuit and avoiding a multiplicity of litigation, a class action is proper even if each member of the class has a separate cause of action for money damages." *Id.*

¶55    Wheaton Franciscan objects that numerosity is not satisfied because there were two invoices of the forty-four submitted that came from entities other than the defendants. It further objects that plaintiff's suggestion that there are large numbers of potential class members is mere speculation. Neither of these objections holds water. Wheaton Franciscan did not dispute that forty-two invoices were issued by its billing department. That number is sufficient to satisfy the numerosity requirement, so even if the two invoices defendants challenged (without evidence) were struck, there are forty-two identified class members, and it does not matter for purposes of class certification if that is all there are.

¶56    As to commonality, Wheaton Franciscan argues that the order "opens up the class definition to patients unrepresented by counsel," and that this "should have not occurred without further investigation, as patients requesting their own records while being provided care may not be charged fees." Wheaton Franciscan appears to be arguing that unrepresented patients were never charged certification and retrieval fees

22

and therefore did not need to be made part of the class, but the definition of the class excludes such persons anyway: section (ii) of the definition limits the class to those who "[w]ere charged a retrieval and/or a certification fee by Defendants[.]"

¶57    Wheaton Franciscan argues that a determination of typicality and adequacy was unsupported by enough evidence: "While the trial court contends Ms. Harwood's claim is substantially similar to unnamed class members, that conclusion is speculative and without a basis in evidence." In light of the claims in this case—that individuals were charged $28 in fees that the statute does not permit Wheaton Franciscan to charge—this argument is almost specious. Harwood alleges that she was charged these fees, and she supplied invoices to establish that. Harwood also alleges that others were charged these fees despite the statute's prohibition, and she has provided evidence of at least forty-two such charges. The trial court concluded that her claim was substantially similar in that each was overcharged by $28, each had the same legal basis for the claim, and each had the same claim to statutory damages if the violation is established. There is evidence to support the trial court's conclusion that the claims of the representative and the class members shared commonality and typicality, and that the adequacy requirement has been met.

¶58    Wheaton Franciscan did not present additional arguments on the predominance and superiority requirements other than to argue that the evidence was not sufficient to support the conclusion that the plaintiff had satisfied these requirements. We disagree. As noted at the hearing, the claims of all the class members and the representative are not only predominant; they are the only claims each member makes. As to superiority, the case law is clear that public policy favors class actions especially where the amount in controversy is so small that the wronged party is unlikely ever to obtain judicial review of the alleged violation without a class action.

**D. Federal case law does not require additional discovery in this case prior to class certification.**

¶59 Wheaton Franciscan relies heavily on two federal cases for the proposition that the trial court erred by failing to require more discovery and by granting certification prematurely. The first case is *Livingston v. Associates Finance, Inc.*, 339 F.3d 553 (7th Cir. 2003), and the second is *Szabo*, 249 F.3d 672. Wheaton Franciscan argues that the trial court "accepted the allegations of the complaint and Ms. Harwood's motion to certify a class, and granted class certification before the defense had any opportunity to engage in significant discovery."

¶60 However, we have reviewed these cases, and we find that neither supports Wheaton Franciscan's position. *Livingston* was a case in which borrowers claimed that the lender had violated the Truth in Lending Act and moved to certify a class. *Id.*, 339 F.3d at 554. Defendants responded with a motion to compel arbitration as required by the loan contract. *Id.* After it found the arbitration agreement unenforceable, the district court proceeded to certify the class. *Id.* at 556. "The district court reached the class certification question by considering [defendant's] motion to dismiss class claims as its substantive response to the [plaintiffs'] motion for class certification, despite the court's earlier decision staying all briefing and discovery on the issue." *Id.*. The Seventh Circuit reversed on the grounds that the defendants had not been given "adequate opportunity to respond substantively" to the class certification motion:

> The district court's *failure to provide* [*defendants*] *with an adequate opportunity to respond substantively* to the [plaintiffs'] class certification motion, particularly in light of the court's decision to stay all briefing and discovery into that question, effectively denied [defendants'] due process rights on the question. *Accordingly,* the court's decision to certify the class must be vacated.

*Id.* at 558-59 (emphasis added; citation omitted).

¶61 *Livingston* thus stands for a much narrower proposition than Wheaton Franciscan suggests. First, it is primarily concerned with the applicability of an arbitration agreement, and second, the error it was correcting was the district court's "failure to provide [defendants] with an adequate opportunity to respond substantively to the [plaintiffs'] class certification motion[.]" *See id.* There is no parallel to this case because here the defendants were given adequate opportunity to respond substantively to the class certification motion.

¶62 *Szabo* likewise fails to support the proposition that the trial court in this case erroneously exercised its discretion when it decided the motion without permitting further discovery. In *Szabo*, the district court certified a nationwide class on the basis of the complaint alone. *Id.*, 249 F.3d at 674-75. The Seventh Circuit reversed, saying that "[c]ertifying classes *on the basis of incontestable allegations in the complaint* moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants." *Id.* at 677 (emphasis added). "Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations." *Id.* What happened in this case is precisely what the appellate court in *Szabo* said should happen. The trial court independently reviewed the allegations and did not base its certification ruling on the complaint alone. The plaintiff provided evidence in the form of invoices and answers to interrogatories. The trial court questioned Harwood closely about the evidence at the hearing and gave no ruling from the bench, stating that it would issue a written decision after more thought. Here, Wheaton Franciscan received "the protection of independent judicial review of the plaintiff's allegations." *See id.*

¶63 Though each of these federal appellate opinions reverses a district court's too-hasty ruling, the facts in those cases are distinguishable from what happened in the

25

trial court in this case. Neither shows that it was error for the trial court to proceed to a decision on the evidence presented by the parties.

¶64 While it put forth the heightened ascertainability requirements in language from Third Circuit opinions,[9] Wheaton Franciscan's sur-reply brief also cited a Seventh Circuit case, *Mullins*, 795 F.3d at 657 and a 2014 district court case from the Eastern District of Wisconsin. The citation did not advise the trial court that in *Mullins*, the Seventh Circuit rejected the "heightened ascertainability" requirement adopted by the Third Circuit with eleven pages of analysis, *see id.* at 661-672. The *Mullins* court said, "Nothing in [Federal Rule of Civil Procedure] 23 mentions or implies it, and we are not persuaded by the policy concerns identified by other courts." *Id.* at 672. We agree with the *Mullins* court that nothing in Federal Rule of Civil Procedure 23 imposes the heightened requirement imposed by the Third Circuit in *Marcus*, 687 F.3d 583, and we conclude that Harwood has established ascertainability to the degree required.

¶65 We note in addition that the record reflects that when Wheaton Franciscan was asked to "[a]dmit that since July 1, 2011, [it] charged at least 100 persons authorized in writing by the patient a certification, processing, basic or retrieval fee to obtain the patient's medical records," two of the Wheaton Franciscan entities responded: "this defendant cannot reasonably ascertain as to whether or not this request is true[.]" Wheaton Franciscan has access to its own billing records. After having an opportunity for discovery, Wheaton Franciscan is not now entitled to delay the class certification on the grounds that further discovery is needed because it has already asserted that it could

---

[9] For example, *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3rd Cir. 2012).

not "reasonably ascertain" the truth of that allegation, which is the crux of the case. Wheaton Franciscan cannot have it both ways.

¶66     For these reasons, we conclude that the trial court properly exercised its discretion in granting the class certification motion, and we affirm.

*By the Court*.—Order affirmed.